**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TECNOGLASS HOLDINGS INC., JOSÉ DAES, AND CHRISTIAN DAES,<br><br>Plaintiffs,<br><br>v.<br><br>CHRISTIAN LAMARCO AND SHADYSIDE PARTNERS, LLC,<br><br>Defendants. | No. 26 Civ. 06986 (PAE) |

**PLAINTIFFS' MEMORANDUM OF LAW**
**IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND**
**REQUEST FOR ATTORNEYS' FEES AND COSTS**

# TABLE OF CONTENTS

**Page**


PRELIMINARY STATEMENT ....................................................................................1

BACKGROUND ....................................................................................................2

A. Parties....................................................................................................2

B. The Guacamaya Leaks And The Fabricated Memos ....................................3

C. Defendants' Defamatory Short-Seller Report And X Posts ..........................4

LEGAL STANDARD..............................................................................................6

ARGUMENT .........................................................................................................6

I. PLAINTIFFS STATE A DEFAMATION CLAIM.............................................6

A. Plaintiffs Plead That Defendants Published False Statements Of Fact....................7

1. Defendants Falsely Published That Plaintiffs Were Cartel Members And Participated In An Illegal Campaign-Finance Scheme ........................8

2. A Reasonable Person Would View Statements Concerning Plaintiffs In The Culper Report As False ..............................................................9

B. The Complaint States A Claim For Defamation By Implication..........................13

C. Defendants' False Statements Are Not Opinions ............................................14

D. Plaintiffs Adequately Allege Actual Malice ...................................................19

1. Defendants Purposely Avoided The Truth ................................................20

2. Defendants Engaged In Selective Disclosure To Bolster The Veracity Of Their False Statements ......................................................21

3. Defendants Ignored Red Flags And Unreliable Sourcing..........................23

4. Defendants' Short Position Motivated Them To Injure Plaintiffs.............24

II. THE COURT SHOULD REJECT DEFENDANTS' REQUEST FOR ATTORNEYS' FEES AND COSTS PURSUANT TO NEW YORK'S ANTI-SLAPP LAW ..........................................................................................25

CONCLUSION.....................................................................................................25

**TABLE OF AUTHORITIES**

*Amira Nature Foods, Ltd. v. Prescience Point LLC*,
No. 15 Civ. 9655, ECF No. 66 (S.D.N.Y. Oct. 17, 2016) ....17, 24

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....6

*Biro v. Conde Nast*,
807 F.3d 541 (2d Cir. 2015)....19

*Biro v. Conde Nast*,
883 F. Supp. 2d 441 (S.D.N.Y. 2012)....13, 14, 20, 23, 24

*Bobulinski v. Tarlov*,
758 F. Supp. 3d 166 (S.D.N.Y. 2024)....25

*Bradley v. Conners*,
169 Misc. 442 (N.Y. Sup. Ct. 1938)....8

*Brian v. Richardson*,
87 N.Y.2d 46 (1995)....18

*Cartagena v. Dixon*,
2026 WL 673811 (S.D.N.Y. Mar. 10, 2026)....7, 16

*Cassava Scis., Inc. v. Bredt*,
2024 WL 555484 (S.D.N.Y. Jan. 3, 2024)....19

*Church of Scientology v. Flynn*,
744 F.2d 694 (9th Cir. 1984)....7

*Cianci v. New Times Pub. Co.*,
639 F.2d 54 (2d Cir. 1980)....9, 14

*Condit v. Dunne*,
317 F. Supp. 2d 344 (S.D.N.Y. 2004)....7, 11

*Consortium for Indep. Journalism, Inc. v. United States*,
2025 WL 919504 (S.D.N.Y. Mar. 26, 2025)....19

*Cortes v. Twenty-First Century Fox Am., Inc.*,
285 F. Supp. 3d 629 (S.D.N.Y.)....12

*Duran v. Henkel of Am., Inc.*,
450 F. Supp. 3d 337 (S.D.N.Y. 2020)....16

*Egiazaryan v. Zalmayev*,
2013 WL 6486258 (S.D.N.Y. Dec. 11, 2013) ....................24

*Enigma Software Grp. USA, LLC v. Bleeping Comput. LLC*,
194 F. Supp. 3d 263 (S.D.N.Y. 2016).................... *passim*

*Eros Int'l, PLC v. Mangrove Partners*,
191 A.D.3d 465 (1st Dep't 2021) ....................19

*Flamm v. Am. Ass'n of Univ. Women*,
201 F.3d 144 (2d Cir. 2000)....................11, 14, 17

*Glob. Auto, Inc. v. Hitrinov*,
2021 WL 7367078 (E.D.N.Y. Aug. 20, 2021)....................8

*Goldfarb v. Channel One Russia*,
663 F. Supp. 3d 280 (S.D.N.Y. 2023)....................9, 21, 24

*Grifols, S.A. v. Yu*,
2025 WL 1826611 (S.D.N.Y. July 2, 2025) ....................10, 11, 18, 20

*Gross v. N.Y. Times Co.*,
82 N.Y.2d 146 (1993) ....................14

*Harte-Hank Comms., Inc. v. Connaughton*,
491 U.S. 657 (1989)....................20, 21, 23

*Henry v. Fox News Network LLC*,
629 F. Supp. 3d 136 (S.D.N.Y. 2022)....................12

*JC Int'l Fin. Ltd. v. Lamarco*,
No. 26 Civ. 4930 (JMF) (S.D.N.Y.) ....................1

*Jewell v. NYP Holdings, Inc.*,
23 F. Supp. 2d 348 (S.D.N.Y. 1998)....................14

*Jewish People for the Betterment of Westhampton Beach v. Vill. of WestHampton Beach*,
778 F.3d 390 (2d Cir. 2015)....................2

*Jones v. Abel*,
2026 WL 835364 (S.D.N.Y. Mar. 26, 2026) ....................21, 25

*Kesner v. Buhl*,
590 F. Supp. 3d 680 (S.D.N.Y. 2022)....................21

*Kesner v. Dow Jones & Co., Inc.*,
515 F. Supp. 3d 149 (S.D.N.Y. 2021)....................2, 9

*Khalil v. Fox Corp.*,
630 F. Supp. 3d 568 (S.D.N.Y. 2022)........................................................................ *passim*

*La Liberte v. Reid*,
966 F.3d 79 (2d Cir. 2020)........................................................................................25

*LifeMD, Inc. v. Lamarco*,
607 F. Supp. 3d 576 (W.D. Pa. 2022)...............................................................1, 15, 17

*Lopez v. Univision Comm'ns, Inc.*,
45 F. Supp. 2d 348 (S.D.N.Y. 1999)...............................................................................7

*Lynch v. City of N.Y.*,
952 F.3d 67 (2d Cir. 2020)......................................................................................6, 10

*Moraes v. White*,
571 F. Supp. 3d 77 (S.D.N.Y. 2021) (Engelmayer, J.) ........................................ *passim*

*Nguyen v. Algenist LLC*,
2022 WL 17251733 (S.D.N.Y. Nov. 28, 2022) .............................................................13

*Novagold Res., Inc. v. J Cap. Rsch. USA LLC*,
2022 WL 900604 (E.D.N.Y. Mar. 28, 2022) ........................................................ *passim*

*Overstock.com, Inc. v. Gradient Analytics, Inc.*,
151 Cal. App. 4th 688 (1st Dist. 2007) ........................................................................18

*Palin v. N.Y. Times Co.*,
940 F.3d 804 (2d Cir. 2019)....................................................................................7, 20

*Parks v. Steinbrenner*,
131 A.D.2d 60 (1st Dep't 1987) ...................................................................................19

*Pisani v. Staten Island Univ. Hosp.*,
440 F. Supp. 2d 168 (E.D.N.Y. 2006) ..........................................................................15

*Rapaport v. Barstool Sports, Inc.*,
2024 WL 88636 (2d Cir. Jan. 9, 2024) .........................................................................19

*Restis v. Am. Coal. Against Nuclear Iran, Inc.*,
53 F. Supp. 3d 705 (S.D.N.Y. 2014)..............................................................................16

*Satanic Temple, Inc. v. Newsweek Mag. LLC*,
661 F. Supp. 3d 159 (S.D.N.Y. 2023), *aff'd*, 177 F.4th 202 (2d Cir. 2026)...........................13

*Schermerhorn v. Rosenberg*,
73 A.D.2d 276 (2d Dep't 1980) .......................................................................................9

*Sell It Social, LLC v. Acumen Brands, Inc.*,
2015 WL 1345927 (S.D.N.Y. Mar. 20, 2015) ....7

*Silvercorp Metals Inc. v. Anthion Mgmt.*,
2012 WL 3569952 (N.Y. Sup. Ct. Aug. 16, 2012) ....19

*Sullivan v. Aircraft Servs. Grp.*,
2025 WL 676027 (E.D.N.Y. Mar. 5, 2025) ....15

*Tang v. Shadyside Partners*,
No. 26 Civ. 5018 (JMF) (S.D.N.Y.) ....1

*Wang v. Sussman*,
2025 WL 2607155 (S.D.N.Y. Sept. 9, 2025) ....25

*Watson v. NY Doe 1*,
439 F. Supp. 3d 152 (S.D.N.Y. 2020) ....14

*YCF Trading Inc. v. Skullcandy, Inc.*,
781 F. Supp. 3d 56 (E.D.N.Y. 2025) ....17

**Statutes & Rules**

N.Y. Civ. Rights L. § 70-a ....6

Fed. R. Civ. P. 12(b)(6) ....6, 25

Plaintiffs Tecnoglass Holdings Inc., José Daes, and Christian Daes ("Plaintiffs") respectfully submit this Opposition to Defendants Shadyside Partners, LLC d/b/a Culper Research and Christian Lamarco's ("Defendants") Motion to Dismiss (the "Motion").[1]

**PRELIMINARY STATEMENT**

Defendants hold themselves out as "concerned" activist short sellers, but are repeat defamation defendants whose supposed "research" reports spread falsities about public companies in an effort to tank their stock and enrich Defendants. Defendants lost a motion to dismiss for publishing false and defamatory statements in another report, *LifeMD, Inc. v. Lamarco*, 607 F. Supp. 3d 576, 584 (W.D. Pa. 2022), and there are two other defamation cases pending against them in this District, *Tang v. Shadyside Partners*, No. 26 Civ. 5018 (JMF) (S.D.N.Y.); *JC Int'l Fin. Ltd. v. Lamarco*, No. 26 Civ. 4930 (JMF) (S.D.N.Y.). This case arises from that very playbook.

Tecnoglass is a publicly traded Colombian-based manufacturer of advanced glass for residential and commercial development, founded by brothers José and Christian Daes ("Daes Brothers"). In August 2025, Defendants published a short-seller report ("Culper Report") that purportedly "uncovered new evidence" falsely and outrageously accusing Plaintiffs of participating in an international drug cartel's operations and an illegal campaign-finance scheme. The Culper Report's purported source was supposedly "confirmed" Mexican "intelligence" memos. But those memos (the "Fabricated Memos") were falsified documents the existence of which, contrary to Defendants' claims, the Mexican government in fact ***denied***. Defendants omitted that—prior to the Culper Report—independent fact checks, a Mexican judicial proceeding,

[1] Although "Defendants" is used throughout this Opposition, upon information and belief, Culper is operated by a sole member: Christian Lamarco.

and a Colombian criminal investigation had dispelled various allegations in the Fabricated Memos and their authenticity. Defendants then profited from their short position when the stock fell.

Although Defendants do not now claim that the allegations are true, they rewrite the Culper Report to claim that the only issue is that they "named" Plaintiffs as mentioned in the Fabricated Memos and that all other alleged defamatory statements come directly from the Fabricated Memos, absolving Defendants of liability. Not so. The Fabricated Memos never say that Plaintiffs had any contact with or role in the cartel or any knowledge of money coming therefrom. Instead, the Fabricated Memos list the Daes Brothers among businessmen allegedly responsible for repaying a loan through government contract proceeds. Moreover, Plaintiffs challenge more than just being "named": Plaintiffs plead that the defamatory statements include Defendants' assertions that they "uncovered new evidence that links" Plaintiffs to the Sinaloa cartel, that "hackers leaked a cache of Mexican intelligence reports" and "[t]he Mexican government confirmed the leaks"—conveying that the documents naming Plaintiffs were part of a government-confirmed hack—and that Plaintiffs were "[n]amed by Mexican Intelligence as [i]nvolved in" a Sinaloa cartel election scheme. Plaintiffs plead with specificity why each statement is a false factual assertion or, at minimum, an actionable defamatory opinion, and that Defendants published with actual malice. The Court should deny the Motion.

## <u>BACKGROUND</u>[2]

### A. Parties

[2] Defendants improperly treat the Culper Report's defamatory statements as established fact. *See* Mot. at 3-7, 9, 11, 15, 21. On this motion, the Court cannot consider documents incorporated by reference into the Complaint "to be evidence of any of the facts stated therein." *Kesner v. Dow Jones & Co., Inc.*, 515 F. Supp. 3d 149, 159 n.1 (S.D.N.Y. 2021) (Engelmayer, J.) (cleaned up). And, Defendants' factual assertions outside the Complaint should be disregarded. *See Jewish People for the Betterment of Westhampton Beach v. Vill. of WestHampton Beach*, 778 F.3d 390, 394 (2d Cir. 2015); Mot. at 7 (Hindenburg Report), 19 (Amparo Proceeding), 23-24 (leaks).

Plaintiff Tecnoglass Holdings Inc. ("Tecnoglass") is a public company that manufactures architectural glass and associated aluminum and vinyl products for construction, supplying over 1,000 customers in North, Central, and South America. ECF No. 1 ("Compl.") ¶¶ 14, 17. The Daes Brothers—Tecnoglass's CEO, COO, and directors—founded the company in 1983. *Id.* ¶ 16.

Defendant Christian Lamarco is an "activist short-seller," Mot. at 1, who founded Defendant Shadyside Partners, LLC d/b/a Culper Research, Compl. ¶ 22. Lamarco holds Culper Research out as an established investment firm that publishes "research reports" on public companies in which Defendants hold a short position. *Id.* ¶¶ 22, 24-25.

### B. The Guacamaya Leaks And The Fabricated Memos

In September 2022, hackers purportedly leaked six terabytes of data from Mexico's Secretariat of National Defense ("SEDENA") (the "Guacamaya Leaks"). *Id.* ¶ 33. Mexico's president acknowledged a hack occurred, but warned that "documents that various media outlets have made public, linking them to the cyberattack . . . are not considered official" and that bad actors may create look-alike documents to damage reputations. *Id.* ¶ 34.

In October 2023, documents purporting to be Mexican intelligence reports concerning cartel activity in Colombia (the "Fabricated Memos") surfaced online, days before Colombian elections, prompting charges of election interference. *See id.* ¶¶ 35, 38. This separate tranche of purportedly leaked materials was ***not*** connected to the Guacamaya Leaks. *Id.* ¶ 51-53.

The Fabricated Memos contain numerous unsupported accusations concerning, among other things, the Sinaloa cartel's operations and a cartel-linked illegal campaign-finance scheme. *Id*. ¶¶ 33-35. Within six months, independent fact checking dispelled many of these accusations. *Id*. ¶¶ 36-41. For example, on October 25, 2023, Colombian investigative journalists from *El Expediente* concluded accusations concerning prominent Colombian businessmen referenced in the Fabricated Memos were unfounded. *See id.* ¶ 39 & n.6. On February 17, 2024, the Colombian

magazine *Semana* reported that Mexican authorities had denied similar key allegations in the Fabricated Memos. *See id.* ¶¶ 41-42 & n.8.

On July 3, 2024, in a constitutional proceeding in Mexico (the "Amparo Proceeding"), eight Mexican authorities denied having issued, received, or having any knowledge of the Fabricated Memos, and the court dismissed the proceeding after concluding that there was no evidence rebutting those sworn denials. *Id.* ¶ 42. Specifically, SEDENA—the office that the Fabricated Memos are attributed to—swore that it had never created and had no knowledge of the Fabricated Memos. *Id.* ¶ 41. On July 30, 2024, in a separate investigation, Colombia's Office of the Attorney General found no evidence that the Fabricated Memos were authentic or that their allegations of cartel ties or a money laundering scheme were true. *Id.* ¶ 43.

**C. Defendants' Defamatory Short-Seller Report And X Posts**

On August 21, 2025, Defendants published the Culper Report, stating that they "uncovered new evidence that links Tecnoglass insiders—including [the Daes Brothers]—to Sinaloa cartel operations in Colombia." Compl. ¶¶ 44, 47; Culper Report at 2. The same day, Defendants posted on X that Mexican "officials allege" that "$TGLS CEO and COO José and Christian Daes [were] participants in Sinaloa cartel schemes." Compl. ¶ 49. The Report and the X posts are rife with false, inflammatory, and defamatory statements, as detailed in Plaintiffs' Exhibit A. Although the Report states "all information contained herein is accurate and reliable," it did not merely replicate public information. It republished already debunked allegations from the Fabricated Memos, *id.* ¶ 46, and added Defendants' own conclusions: that the Daes Brothers "participated in" an "illicit financing of the [Colombian] presidential campaign," were "Involved in Sinaloa Cartel Election Scheme," and were part of a "corrupt contract" scheme in which "Sinaloa cartel funds would be funneled to politicians as loans, and the debt from the politician would be repaid on their behalf by . . . Jose and Christian Daes[.]" *Id.* ¶¶ 44, 47-49, 64. The Report also accurately states that

"Mexican hackers leaked a cache of Mexican intelligence reports" and that "[t]he Mexican government confirmed the leaks." *Id.* ¶ 47. But by representing the leaks as "confirmed," the Report falsely implies that the accusations concerning the Daes Brothers are "confirmed" rather than merely that a leak occurred. *See id.*

Each of these statements is factually incorrect and defamatory per se, and their publication has caused Plaintiffs substantial reputational harm and damage. *See* Ex. A. As alleged in the Complaint, "[Plaintiffs] are not, and never have been, connected to or involved in any way with, the Sinaloa cartel or its operations." Compl. ¶ 51. Likewise, "Plaintiffs have never been involved with any alleged illegal election finance scheme or other acts of unlawfulness or corruption involving the Sinaloa cartel." *Id.* Moreover, "Defendants' statements are further false because the [Fabricated Memos] . . . do not reflect any actual statements or conclusions by the Mexican government or any official or intelligence unit within the Mexican government." *Id.* The Culper Report's allegations were designed to intentionally mislead. *Id.* ¶ 53.

Plaintiffs allege the statements also convey a false implication. For example, Defendants state that the Sinaloa cartel "seized" control of the port of Barranquilla and urged readers to "[r]ecall that Tecnoglass is headquartered in Barranquilla, and most of its product flows through the Barranquilla port." *Id.* ¶ 47. While those statements are true, when taken together, they convey to readers that Plaintiffs were implicated with the cartel. Defendants also falsely state in the next paragraph that the Daes Brothers were implicated in a "corrupt contract" scheme whereby "Sinaloa cartel funds would be funneled to politicians as loans," *id.*, adding to the defamatory implication.

Plaintiffs allege that Defendants took a short position in Tecnoglass and then knowingly published the false statements in the Culper Report with the intent to harm Plaintiffs so that the stock would drop, thereby enriching Defendants. *Id.* ¶ 64. As described in the Complaint,

Defendants intentionally omitted and recklessly disregarded public information that the Fabricated Memos were not authentic and not part of the Guacamaya Leaks (because they are not real government documents capable of being hacked). *Id.* ¶¶ 48, 51, 53. Defendants intentionally omitted and recklessly disregarded public independent fact checks, a Mexican judicial proceeding, and a Colombian criminal investigation that dispelled the authenticity of the Fabricated Memos. *Id.* ¶¶ 60, 62-63. By intentionally choosing not to include or investigate public information concerning the authenticity of the Fabricated Memos and the accuracy of its allegations, Defendants misrepresented the diligence of the Culper Report in order to bolster its own credibility and mask Defendants' doubts about its defamatory accusations. *Id.* ¶¶ 45, 54-55.

On August 26, 2025, Plaintiffs demanded that Defendants retract their false and defamatory statements. *Id.* ¶ 65. On August 17, 2026, Plaintiffs filed the Complaint. *See* Compl. On October 1, 2026, Defendants moved to dismiss the Complaint and requested attorneys' fees and costs pursuant to New York Civil Rights Law Section 70-a. ECF No. 18 ("Mot.").

## LEGAL STANDARD

A complaint survives a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure where it pleads "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court must "construe all reasonable inferences that can be drawn from the complaint in the light most favorable to the plaintiff" and must "accept 'well-pleaded factual allegations . . . as true.'" *Lynch v. City of N.Y.*, 952 F.3d 67, 74-75 (2d Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). A complaint need not provide "detailed factual allegations," but must only "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

## ARGUMENT

### I. PLAINTIFFS STATE A DEFAMATION CLAIM

To state a defamation claim under New York law, a plaintiff must allege: "(1) a written defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or per se actionability." *Palin v. N.Y. Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019).[3] Defendants make three principal arguments: (1) the statements are not false because Defendants repeated allegations from the Fabricated Memos; (2) the statements are protected opinion; and (3) Plaintiffs do not adequately allege actual malice. None has merit.

**A. Plaintiffs Plead That Defendants Published False Statements Of Fact**

"At the motion to dismiss stage, as to the element of falsity, federal courts have required plaintiffs to plead facts that, if proven, would allow a reasonable person to consider the statement false." *Moraes v. White*, 571 F. Supp. 3d 77, 94 (S.D.N.Y. 2021) (Engelmayer, J.) (cleaned up). A statement is false where it "would have a different effect on the mind of the reader from that which the pleaded truth would have produced." *Lopez v. Univision Comm'ns., Inc.*, 45 F. Supp. 2d 348, 357 (S.D.N.Y. 1999). "The court must read the statement[s] 'in context to test [their] effect on the average reader, not to isolate particular phrases but to consider the publication as a whole.'" *Sell It Social, LLC v. Acumen Brands, Inc.*, 2015 WL 1345927, at *6 (S.D.N.Y. Mar. 20, 2015) (cleaned up). Dismissal on falsity grounds may be granted "'only if the statement's truth may be established from the complaint alone.'" *Cartagena v. Dixon*, 2026 WL 673811, at *9 (S.D.N.Y. Mar. 10, 2026). And, "the court must refrain from a 'hair-splitting' analysis of what is said in an article to find an innocent meaning." *Condit v. Dunne*, 317 F. Supp. 2d 344, 367 (S.D.N.Y. 2004) (quoting *Church of Scientology v. Flynn*, 744 F.2d 694, 696 (9th Cir. 1984)).

---

[3] Defendants do not challenge that the Complaint satisfies elements one (statements are of and concerning Plaintiffs); two (published to a third party); and five (defamatory per se and/or special damages). *See Palin*, 940 F.3d at 809.

Here, Plaintiffs adequately plead falsity. First, Defendants published and republished false and defamatory statements of fact. That some of the statements originated elsewhere or were prefaced with "allegedly" does not render them true. Second, the Culper Report contains verifiable statements of fact that are not contained in the Fabricated Memos, including that they were part of the Guacamaya Leaks, that they were authentic, and they had been confirmed by the Mexican government.

**1. Defendants Falsely Published That Plaintiffs Were Cartel Members And Participated In An Illegal Campaign-Finance Scheme**

At the threshold, Defendants do not contend that the accusations that the Daes Brothers are affiliated with a drug cartel, labeled as a "terrorist organization," or "participated" and were "involved" in a campaign-finance scheme were true and they do not dispute that the accusations are defamatory. *See* Compl. ¶¶ 3-4, 46-47, 49-51. Nor can they. *See, e.g.*, *Glob. Auto, Inc. v. Hitrinov*, 2021 WL 7367078, at *8 (E.D.N.Y. Aug. 20, 2021) (accusation of involvement in "financial crimes" was per se defamatory); *Bradley v. Conners*, 169 Misc. 442, 445 (N.Y. Sup. Ct. 1938) (allegation plaintiff's "members are racketeers" was per se defamatory). The allegations are false: Plaintiffs vehemently deny those allegations and dispute that Mexican intelligence discovered their non-existent "involve[ment]." Compl. ¶¶ 3, 4, 47, 50-53; *see Khalil v. Fox Corp.*, 630 F. Supp. 3d 568, 579 (S.D.N.Y. 2022) (falsity adequately alleged where plaintiff denied each allegation); *Moraes*, 571 F. Supp. 3d at 96 ("implied allegation . . . must be treated as false" where plaintiff denies it).

Defendants are liable both for repeating the Fabricated Memos' false and defamatory statements and for their own statements about Plaintiffs that appear nowhere in the Fabricated Memos. Defendants misguidedly aver (Mot. at 2, 9-10) that the statements are not false because the Daes Brothers are "named" in the Fabricated Memos. But "[a] speaker who repeats another's

defamatory statement is not made immune from liability for defamation merely because another person previously made the same demeaning claim." *Enigma Software Grp. USA, LLC v. Bleeping Comput. LLC*, 194 F. Supp. 3d 263, 287 (S.D.N.Y. 2016) (Engelmayer, J.); *Cianci v. New Times Pub. Co.*, 639 F.2d 54, 60-61 (2d Cir. 1980) ("black-letter" law "that one who republishes a libel is subject to liability"); *Goldfarb v. Channel One Russia*, 663 F. Supp. 3d 280, 295 (S.D.N.Y. 2023) ("defamed plaintiff [can] recover not only from the individual who initially uttered or wrote the defamatory words but also from any person or entity that subsequently disseminates them").

Nor are "summary statements or headings" (Mot. at 9) protected: New York courts have found headlines to be defamatory. *See Cianci*, 639 F.2d at 60 (headline was "clearly a statement of fact" actionable under New York law); *see also Schermerhorn v. Rosenberg*, 73 A.D.2d 276, 286-87 (2d Dep't 1980) (headline only protected if it is "fair index of the matter contained in a *truthful* report" (emphasis added)). Here, the Fabricated Memos' statements are false and, accordingly, Defendants cannot escape liability for republishing false and defamatory summaries or headings characterizing them. And, because inferences run in Plaintiffs' favor, whether the headings are accurate is a question reserved until after discovery. *See Kesner*, 515 F. Supp. 3d at 187 (reserving decision on alleged defamatory headline to summary judgment because "[d]iscovery is necessary to test the accuracy of the factual representations" underlying the article).

### 2. A Reasonable Person Would View Statements Concerning Plaintiffs In The Culper Report As False

Defendants create a strawman by claiming that the only challenged statement is Defendants' reporting that the Fabricated Memos "named" Plaintiffs. Mot. at 2, 8-10. That is simply not true. Defendants falsely stated that the Fabricated Memos were part of the Guacamaya Leaks and falsely implied that the Mexican government "confirmed" them as authentic. Compl. ¶ 73; *see also id.* ¶ 49 (X posts stating "officials allege" Plaintiffs were cartel "participants");

Culper Report at 12. These statements have a "precise meaning which is readily understood," and "capable of being proven true or false." *Grifols, S.A. v. Yu*, 2025 WL 1826611, at *13 (S.D.N.Y. July 2, 2025); *see Enigma Software*, 194 F. Supp. 3d at 284 ("'overall thrust'" that plaintiff "is engaged in a deliberate and fraudulent scam" made accusation's "surrounding commentary [] more concrete and reasonably precise").

For example, the Culper Report states the Daes Brothers were "Named by Mexican Intelligence as Involved in Sinaloa Cartel Election Scheme." Compl. ¶ 47; Culper Report at 12. It relies on the Fabricated Memos as support, but those are not authentic, Compl. ¶ 48, which the Court must accept, *see Lynch*, 952 F.3d at 74-75. And authenticity is not "beside the point." Mot. at 2. Mexican authorities *denied* that Mexican intelligence created the Memos. *Compare* Compl. ¶ 49 (Defendants' X post stating "officials allege") *with id.* ¶¶ 41-42, 51 (noting eight Mexican authorities, including the office the Memos name as their author, swore they never issued them).

Defendants' efforts to use the Fabricated Memos as a shield from liability fail for the additional reason that many of Defendants' accusations about Plaintiffs are not in the Memos.[4] The Culper Report avers that the Fabricated Memos "detail how" businessmen like the Daes Brothers "laundered" funds. Compl. ¶ 60; *see also id.* ¶ 47 (Plaintiffs were "named explicitly as . . . businessmen who allegedly participated in this scheme."); Culper Report at 5; *cf. id.* at 19 (naming individuals "alongside the Daes brothers as facilitating" money laundering). But the Fabricated Memos simply (and falsely) list Plaintiffs among businessmen described as responsible

[4] Defendants argue the Report expressed only a "concern" that Plaintiffs' names appeared in the Fabricated Memos. *See* Mot. at 11. That litigation-driven retelling rests on a single line buried in a separate section from the false statements. Culper Report at 2, 12-13, 18. And Defendants did not report that the Daes Brothers appear in a document of unknown provenance; Defendants stated they "uncovered new evidence that links" Plaintiffs to cartel operations, Plaintiffs were "[n]amed by Mexican [i]ntelligence," and the "Mexican government confirmed the leaks." Compl. ¶ 47.

for repaying a loan through government contract proceeds: the Fabricated Memos say ***nothing*** about Plaintiffs having contact with the cartel, knowledge that the money came from the cartel, or any role in cartel activity. Compl. ¶ 60. The Fabricated Memos discuss elsewhere "cartel allegations [] directed at a separate group of named individuals, none of whom are Plaintiffs." *Id.* It is, therefore, false to state that Plaintiffs were "named" as "participat[ing] in the [Sinaloa cartel operations] scheme." *Id.* ¶ 47.

Finally, Defendants erroneously rely (Mot. at 9-10) on *Dfinity Found. v. N.Y. Times* for the proposition that ***falsity*** is not alleged where a statement "simply report[s] the alleged findings contained in" a third-party document. *See* 702 F. Supp. 3d 167, 175 (S.D.N.Y. 2023). But *Dfinity* held that the operative statements were ***opinion***—not that plaintiffs failed to adequately allege falsity. *See id.* And here, by contrast, Defendants did not merely report the Fabricated Memos; they altered them to meet Defendants' desired narrative. Compl. ¶¶ 47, 60; *see Grifols*, 2025 WL 1826611, at *13 ("[T]he statement that the Scranton Loan is undisclosed is not presented as a result of interpretation or analysis—it is presented as one of the publicly available facts."). Defendants' defamatory statements manufacture a connection—***not*** an opinion—between Plaintiffs and illicit cartel activity that is not in the Fabricated Memos. Compl. ¶ 60.

Even if Defendants had accurately reported the content of the Fabricated Memos (they did not), reliance on third-party sources does not insulate Defendants who publish defamatory statements. *See Flamm v. Am. Ass'n of Univ. Women*, 201 F.3d 144, 152 (2d Cir. 2000) ("[T]he fact that a particular accusation originated with a different source does not automatically furnish a license for others to repeat or publish it without regard to its accuracy or defamatory character." (cleaned up)); *Condit*, 317 F. Supp. 2d at 365-66 (denying motion to dismiss where "facts disclosed by the defendant are republications of falsities" even though "literally true"). Defendants' citations

(Mot. at 9-10) to *Henry v. Fox News Network LLC*, 629 F. Supp. 3d 136 (S.D.N.Y. 2022) and *Cortes v. Twenty-First Century Fox Am., Inc.*, 285 F. Supp. 3d 629 (S.D.N.Y. 2018) are inapposite because the Complaint pleads facts—including sworn denials of attribution by the Mexican authorities from the office to which the Fabricated Memos are attributed—showing that the "steps" the Culper Report describes (that Mexican intelligence "named" Plaintiffs, and that the Mexican government confirmed the leaks, including that the Fabricated Memos came from the leaks) never occurred. Compl. ¶¶ 41-42, 51-53.

Defendants argue that the Complaint "concedes" that the Daes Brothers' names appeared behind the Fabricated Memos' redactions (Compl. ¶ 57) and therefore never alleges that the Culper Report's "actual statements" are false. Mot. at 2, 9-10. This misses the point. Plaintiffs do not allege that the Fabricated Memos did not list them, but rather allege that the Fabricated Memos are fabricated, were never issued by Mexican intelligence, were never part of the Guacamaya Leaks, and do not even say what Defendants attribute to them. Yet Defendants falsely presented the Fabricated Memos as a genuine product of Mexican intelligence confirmed by the Mexican government. Compl. ¶¶ 41-42, 47-48, 51-53. Each is false, independent of whether Plaintiffs' names appear in the documents, because each depends on the documents' provenance. *See Enigma Software*, 194 F. Supp. 3d at 287 (interpretation of facts actionable "where the disclosed facts are themselves false"); *Moraes*, 571 F. Supp. 3d at 96-97 (opinion resting on disclosed but false predicate facts may be actionable).

The Culper Report's disclaimer (Mot. at 12) does not help Defendants. It affirmatively states that "all information contained herein is accurate and reliable," Compl. ¶ 54; Mot. at 12, and a generic "as is" proviso cannot negate specific, verifiable assertions—assertions the Report presents as the product of Defendants' own investigation. *See Novagold Res., Inc. v. J Cap. Rsch.*

*USA LLC*, 2022 WL 900604, at *5 & n.4 (E.D.N.Y. Mar. 28, 2022) (broad disclaimers "are insufficient to cloak the entire Report in the protections afforded opinions," and short seller "is not absolved . . . by virtue of being a short-seller"); *Enigma Software*, 194 F. Supp. 3d at 286 (sporadic qualifying phrases did not convert posts into nonactionable opinion). At minimum, how a reasonable reader would understand the disclaimer is not a question the Court may resolve against Plaintiffs on the pleadings. *Cf. Nguyen v. Algenist LLC*, 2022 WL 17251733, at *8 (S.D.N.Y. Nov. 28, 2022) ("The sufficiency of a disclaimer . . . raises factual questions that are not well suited for resolution on a motion to dismiss." (cleaned up)).

**B. The Complaint States A Claim For Defamation By Implication**

Even if specific statements, standing alone, were not false, the Complaint states a claim for defamation by implication. "[D]efamat[ion] by implication may be based on a combination of individual statements which in themselves may not be defamatory, but which might lead the reader to draw an inference that is damaging to the plaintiff." *Biro v. Conde Nast*, 883 F. Supp. 2d 441, 463-64 (S.D.N.Y. 2012) (cleaned up); *see also Satanic Temple, Inc. v. Newsweek Mag. LLC*, 661 F. Supp. 3d 159, 170 (S.D.N.Y. 2023) ("literally true statements are not immune from suit" for defamation-by-implication), *aff'd*, 177 F.4th 202 (2d Cir. 2026. Where a defamatory implication "arises due to the omission of certain facts, the Court will look to whether such omission would materially change the alleged implication or render untrue what is otherwise unchallenged." *Biro*, 883 F. Supp. 2d at 466.

The Report states that "[i]n late 2022 and 2023, Mexican hackers leaked six terabytes of data from Mexican military and defense agencies," Compl. ¶ 47, but omits that the Fabricated Memos were not part of the Guacamaya Leaks, *id.* ¶¶ 51-53. After describing the cartel's control of Barranquilla's port, Defendants urged readers to "[r]ecall that Tecnoglass is headquartered in Barranquilla" and "[m]ost of its product flows through the Barranquilla port." *Id.* ¶ 47; Culper

Report at 12. The clear import is that Plaintiffs were illegally associating with the cartel, and such import is defamation by implication. *See Biro*, 883 F. Supp. 2d at 466-67 ("that a public figure . . . was seen purchasing burglary tools may, in . . . a rash of neighborhood thefts, be actionable because it conveys a defamatory implication that the public figure was the culprit"); *Watson v. NY Doe 1*, 439 F. Supp. 3d 152, 162 (S.D.N.Y. 2020) (denying dismissal where statement gave "reader the impression" of defamatory statement and defendant "endorsed" it).

### C. Defendants' False Statements Are Not Opinions

Contrary to Defendants' arguments (Mot. at 12-15), Defendants' statements assert verifiable facts, not opinions. "Under New York law, statements of opinion are not actionable as defamation." *Moraes*, 571 F. Supp. 3d at 94. "A statement of 'pure opinion' is either accompanied by a recitation of the facts upon which it is based or does not imply that it is based upon undisclosed facts." *Id.* (cleaned up). New York courts consider three factors when determining whether a statement is a non-actionable opinion:

> (1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements can be proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal . . . readers or listeners that what is being read or heard is likely to be opinion, not fact.

*Flamm*, 201 F.3d at 153 (quoting *Gross v. N.Y. Times Co.*, 82 N.Y.2d 146, 153 (1993)). Even when a statement is an opinion, dismissal is not appropriate where the truth of the facts underlying an opinion is in dispute. *See Cianci*, 639 F.2d at 64-65 (reversing dismissal of defamation claim where statements "convey[ed] false representations of defamatory fact"); *see Jewell v. NYP Holdings, Inc.*, 23 F. Supp. 2d 348, 377 (S.D.N.Y. 1998) ("[W]here the plaintiff alleges that both the opinions and the facts are false, a motion to dismiss should not be granted[.]"). Ultimately, "[t]he dispositive inquiry . . . is whether a reasonable reader could have concluded that [the statements were] conveying facts[.]" *Gross*, 82 N.Y.2d at 152.

A reasonable reader could conclude that Defendants' statements conveyed facts. "[T]he 'pure' opinion rule does not apply unless all the supporting factual materials are disclosed and none are incorrect or have been misinterpreted." *LifeMD*, 607 F. Supp. 3d at 594 (cleaned up). Just like in *LifeMD*, "Lamarco and Culper did not disclose factual materials showing that Plaintiffs committed" an illegal campaign-finance scheme or were involved with the criminal activities of the Sinaloa cartel. *See id.* (finding Lamarco's statement that plaintiffs were "'intimately involved' in a 'wide ranging' and 'material' fraud'" that plaintiffs concealed was false and defamatory).

As pleaded, the statements imply undisclosed facts regarding the Fabricated Memos' authenticity to support Defendants' "uncovered new evidence." Compl. ¶¶ 52-54. Statements that "Mexican hackers leaked a cache of Mexican intelligence reports" that "named explicitly" Plaintiffs as "allegedly participat[ing] in" the "Sinaloa cartel's illicit financing scheme" (*id.* ¶ 47) imply to a reasonable reader that "Defendant is aware of undisclosed facts" supporting its conclusion.[5] *See Novagold*, 2022 WL 900604, at *6 (statements relying on an unsupported conclusion showed that defendant "is aware of undisclosed facts"); *Pisani v. Staten Island Univ. Hosp.*, 440 F. Supp. 2d 168, 176 (E.D.N.Y. 2006) (same). Where "the predicate facts are disclosed but are false, such that the disparity between the stated facts and the truth would cause a reader to question the opinion's validity, the opinion may be an actionable defamatory opinion." *See Enigma Software,* 194 F. Supp. 3d at 281. Plaintiffs plead that the Fabricated Memos are not authentic; Mexican authorities denied issuing them; allegations of cartel involvement are untrue; and that the Fabricated Memos do not attribute to Plaintiffs any cartel activity. Compl. ¶¶ 48, 51-53, 60; *see Sullivan v. Aircraft Servs. Grp.*, 2025 WL 676027, at *15 (E.D.N.Y. Mar. 5, 2025) ("Even if the

[5] If Defendants were aware of and relied on the "Mexican and Colombian media outlets [which] reported" that the Fabricated Memos were part of the Guacamaya Leaks, this is an undisclosed fact on which the Culper Report is based. *See* Mot. at 21.

statement was an opinion, the Court cannot conclude as a matter of law that it is non-actionable because . . . a reasonable jury could find the facts . . . that the statements are based on" to be false.).

The *Gross* factors confirm that the statements are factual. *First*, Defendants used precise language to inform readers that Plaintiffs were "Named by Mexican Intelligence as Involved in Sinaloa Cartel Election Scheme;" that "Mexican hackers leaked a cache of Mexican intelligence reports;" and that "leaked documents" name Plaintiffs "explicitly as two of the eight businessmen who . . . participated in this scheme"—and touted "new, previously unreported evidence." Compl. ¶ 47. Each is readily understood as an unambiguous statement of fact: Defendants knew the provenance of the Fabricated Memos; Defendants represent the Memos linked Plaintiffs to a cartel; and Plaintiffs are, in fact, connected to Sinaloa cartel operations. Plaintiffs plead with specificity that each statement can be proven true or false, and is false. Compl. ¶¶ 42-43, 51-53, 60.

*Second*, Defendants' statements can be proven true or false. "[A]ccusations of criminal or unethical activity, in particular, are considered expressions of fact." *Moraes*, 571 F. Supp. 3d at 95; *see also Cartagena*, 2026 WL 673811, at *9 ("specific accusations" of criminal activity not opinion); *Restis v. Am. Coal. Against Nuclear Iran, Inc.*, 53 F. Supp. 3d 705, 721-22 (S.D.N.Y. 2014) (collecting cases). Either Plaintiffs were involved in a "Sinaloa Cartel Election Scheme" with "corrupt contract awards" or they were not. Compl. ¶ 47; *see Khalil*, 630 F. Supp. 3d at 582.

Whether the Fabricated Memos are authentic and came from a "large cache of documents leaked by Mexican hackers," likewise can be proven true or false. Compl. ¶¶ 34-43, 47, 51-52. Defendants' reliance on the "indicia of legitimacy of the [Fabricated Memos]"[6] and "facts

---

[6] Defendants cannot coherently contend both that they "never opined on the authenticity of the" Fabricated Memos and that the Culper Report "makes clear" they were "part of a large cache of documents leaked by Mexican hackers." *Compare* Mot. at 14 *with id.* at 11. And, whether the Fabricated Memos were genuine is "a question of fact not suited for resolution at motion to dismiss stage." *See Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 346 (S.D.N.Y. 2020).

corroborating the allegations in the [Fabricated Memos]," Mot. at 15, confirms that the Culper Report makes a factual claim about the Fabricated Memos' authenticity. That claim can be proven, and Plaintiffs plead it is false. Compl. ¶¶ 42-43, 51-53, 56-58.

*Third*, the Culper Report's context signals that its assertions are facts. It opens: "We are short Tecnoglass Inc. . . . because we uncovered new evidence that links" Plaintiffs "to Sinaloa cartel operations in Colombia." Compl. ¶ 47. That language—Defendants' "new evidence"—is precisely the type of affirmative, fact-based language courts in this District have found "capable of being proven true or false." *See Khalil*, 630 F. Supp. 3d at 582-83 ("[T]he continued discussion of evidence and affirmative statements would not indicate to a reader or listener that [Defendants] were merely stating their opinions.").

Defendants argue that all short seller reports are "inherently subjective opinion." Mot. at 14-15. But one federal court already rejected this position regarding a different Culper report. *See LifeMD*, 607 F. Supp. 3d at 594 ("It would undermine the law of defamation if speakers or authors could simply employ a talismanic word formula to absolve themselves of slander or libel."); *see* Compl. ¶ 47. Nor does disclosing a bias on the subject of a report shield defendants. Mot. at 14; *see Novagold*, 2022 WL 900604, at *5 n.4 (disclaimer does not shield short-seller from defamation liability); *Amira Nature Foods, Ltd. v. Prescience Point LLC*, No. 15 Civ. 9655, ECF No. 66, Hr'g Tr. at 59:23-25 (S.D.N.Y. Oct. 17, 2016) ("[short seller] cannot avoid liability simply by including a legal disclaimer or sprinkling their reports with words that they believe connote opinion"). Defendants' "raft of qualifiers," Mot. at 15, fares no better: adding minor qualifiers before defamatory statements—such as "I think" or "in my opinion"—does not "render innocent an otherwise defamatory statement." *Flamm*, 201 F.3d at 152; *see also YCF Trading Inc. v. Skullcandy, Inc.*, 781 F. Supp. 3d 56, 80 (E.D.N.Y. 2025) (similar); *LifeMD*, 607 F. Supp. 3d at

594-95 (holding Lamarco and Culper cannot "shield [themselves] from defamatory communications by prefacing the communications with disclaimers such as 'we think' and 'we believe'"); *Overstock.com, Inc. v. Gradient Analytics, Inc.*, 151 Cal. App. 4th 688, 703-04 (1st Dist. 2007) (statements "d[o] not attain constitutional protection" because something "appear[s]" to be the case). Nor does labeling the report an "opinion" make it one. *See* Mot. at 15; *Brian v. Richardson*, 87 N.Y.2d 46, 52 (1995) (editorial can contain actionable facts); *Grifols*, 2025 WL 1826611, at *13-14 & n.7 (holding statements actionable where they "state specific and verifiable details" and author discovering a fact "arguably reinforces the factual nature of the statement"). Even taking Defendants' argument at face value, the qualifiers do not appear in connection with the defamatory statements. *Compare* Mot. at 15 *with* Compl. ¶¶ 47, 60; *see* Ex. A.

Defendants' repeated assertion that Plaintiffs "do not dispute" unrelated facts—such as the Char and Daes families' ties to Banco Serfinanza, the Gerlein and Amaris connections, and the Hindenburg report (Mot. at 5-7, 15, 21)—misses the point. A complaint need only plead the falsity of the statements it challenges. *See* Compl. ¶¶ 47, 49-53, 60; *Enigma Software*, 194 F. Supp. 3d at 286 n.19 (dismissal on the pleadings is improper where publication had "assertions of objective fact that, if proven false, could form the predication for a maintainable libel action"). None of those facts bears on whether the Fabricated Memos are authentic, whether Mexican intelligence "named" Plaintiffs, or whether Plaintiffs "participated" in a cartel-financed election scheme.

Finally, Defendants argue that everything in the Culper Report and X Posts is *necessarily* opinion because of their disclosed overarching opinion that the company is overvalued. *See* Mot. at 13-14 (citing cases finding short-seller reports are non-actionable opinion). This is a strawman argument. Plaintiffs do not challenge that opinion (although wrong), but rather the specific statements of fact offered to support it: that Plaintiffs were affiliated with a cartel, involved in an

illegal election scheme, and that Mexican authorities had "confirmed" it. *See id.* at 4. Defendants' cited cases are thus inapposite: each holds that a hypothesis is protected opinion where the facts on which it is based are disclosed. *See* Mot. at 13-15.[7] Here, the disclosed "facts" are false. *See Moraes*, 571 F. Supp. 3d at 96–97 (noting where "the predicate facts are disclosed but are false, . . . the opinion may be an actionable defamatory opinion" and collecting cases).

**D. Plaintiffs Adequately Allege Actual Malice**

Defendants contend that Plaintiffs must plead actual malice, invoking New York's anti-SLAPP law and, in a footnote, Plaintiffs' purported status as limited-purpose public figures. Mot. at 16 & n.5. Plaintiffs do not concede either point,[8] but the Court need not resolve them: Plaintiffs allege in detail that Defendants acted with actual malice in publishing the Report and thus satisfy any fault standard. *See* Compl. ¶¶ 32-43, 48, 50-60, 62-63, 66, 73.

"Actual malice" is "knowledge that the statements were false or . . . reckless disregard as to their falsity." *Biro v. Conde Nast*, 807 F.3d 541, 544 (2d Cir. 2015). A plaintiff plausibly alleges reckless disregard where the defendant published statements with "a 'high degree of

---

[7] Defendants' cited cases do not include instances where the *factual basis* of an opinion is alleged to be false. *See Cassava Scis., Inc. v. Bredt*, 2024 WL 555484, at *10 (S.D.N.Y. Jan. 3, 2024) (inferences about scientific research were opinion); *Eros Int'l, PLC v. Mangrove Partners*, 191 A.D.3d 465, 466 (1st Dep't 2021) (tweets featuring real-time "off-the-cuff, gut responses" and "hyperbolic" commentary were opinion); *Parks v. Steinbrenner*, 131 A.D.2d 60, 65 (1st Dep't 1987) (statements of "displeasure at a[ baseball] umpire''s 'calls'" were opinion); *Consortium for Indep. Journalism, Inc. v. United States*, 2025 WL 919504, at *17 (S.D.N.Y. Mar. 26, 2025) (labels website was "untrustworthy" and "anti-U.S." were opinion); *Rapaport v. Barstool Sports, Inc.*, 2024 WL 88636, at *4 (2d Cir. Jan. 9, 2024) (erroneous comment that plaintiff had a "stalking charge" was opinion where charge was actually harassment); *Silvercorp Metals Inc. v. Anthion Mgmt.*, 2012 WL 3569952, at *9 (N.Y. Sup. Ct. Aug. 16, 2012) (allegation of "*Potential* . . . Accounting Fraud" was "opinion about financial condition of" company "premised on 'facts'").

[8] Section 76-a does not apply for the reasons described in Section II. And, in a conclusory footnote, Defendants argue that Plaintiffs are public figures and the actual malice standard applies. Mot. at 16 n.5. But Plaintiffs are private figures and only need to allege negligence. *See Enigma Software*, 194 F. Supp. 3d at 289 ("mere fact that a business enterprise is successful is an insufficient reason to deem it a public figure"); *Novagold*, 2022 WL 900604, at *6-8 (similar).

awareness of . . . probable falsity' or must have 'entertained serious doubts as to the truth of his publication.'" *Khalil*, 630 F. Supp. 3d at 584 (quoting *Harte-Hanks Comms., Inc. v. Connaughton*, 491 U.S. 657, 667 (1989)). Actual malice may be found "where there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports" or there was the "purposeful avoidance of the truth." *Harte-Hanks*, 91 U.S. at 688, 692-93 (reckless disregard can be established by "evidence of an intent to avoid the truth"). "Actual malice can be proven . . . by direct evidence" or "inferred through circumstantial evidence." *Biro*, 963 F. Supp. 2d 255, 277 (S.D.N.Y. 2013).

> Courts have noted various circumstances that may be probative of actual malice, including where: a story is fabricated or is based wholly on an unverified, anonymous source, . . . the defendant has a motive for defaming the plaintiff, the defendant knows or suspects that it has committed an error and refuses to acknowledge it [or] the words or acts of the defendant before, at, or after the time of the communication indicate that the defendant knew that his or her statement was or may well have been false. In cases involving the reporting of a third party's allegations, recklessness may be found where there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports.

*Id.* (cleaned up); *see also Grifols*, 2025 WL 1826611, at *10 (similar).

**1. Defendants Purposely Avoided The Truth**

Plaintiffs plead with specificity that Defendants published the defamatory statements with a "purposeful avoidance of the truth" and knowingly or recklessly disregarded publicly available facts. Compl. ¶¶ 32-43, 48, 50, 54-60, 62-63, 66, 73. The link Defendants drew between Plaintiffs and the Sinaloa cartel is one that the Fabricated Memos do not make. Compl. ¶ 60; *Palin*, 940 F.3d at 813-15 (holding that plausible inference of actual malice existed when author had reviewed numerous articles showing contrary facts); *Novagold*, 2022 WL 900604, at *9 ("[A]llegations that Defendant had access to relevant truthful facts contradicting the statements in the Report which it chose to ignore or blatantly misrepresent paint a plausible picture of Defendant's willful disregard for the truth."); *Grifols*, 2025 WL 1826611, at *20 (actual malice where it was "plausible to infer" defendant saw the document and "stated precisely the opposite"). Defendants here screenshotted

and linked to sources that undercut their own "inherently improbable" account to their readers about what the documents said. Compl. ¶¶ 55, 60; *see also Harte-Hanks*, 491 U.S. at 691 (actual malice pleaded where allegation was "highly improbable" and "inconsistent with the fact[s]" known to defendants at the time).

Defendants contend that, "at best," Plaintiffs allege "that defendant did not know if the [Fabricated Memos were authentic] and failed to verify" it, which suggests only negligence. Mot. at 17. But Plaintiffs allege that Defendants had specific and concrete reasons to doubt the authenticity of and allegations in the Fabricated Memos, including: they surfaced without provenance, were contradicted by a public record of sworn government denials and independent fact-checks, and bore facial anomalies. Compl. ¶¶ 32-43, 55-60. Defendants nevertheless ignored this record and presented the two-year-old Fabricated Memos as "new evidence." *id*. ¶¶ 32-43, 55-60; *see Khalil*, 630 F. Supp. 3d at 584 (failure to investigate may not suffice, but "the purposeful avoidance of the truth is in a different category"). "Once doubt exists," as it indisputably did on these facts, "the publisher must act reasonably in 'dispelling it.'" *Kesner v. Buhl*, 590 F. Supp. 3d 680, 694 (S.D.N.Y. 2022). Defendants did no such thing here.

**2. Defendants Engaged In Selective Disclosure To Bolster The Veracity Of Their False Statements**

Courts find actual malice sufficiently pleaded where a defendant "purposefully avoided the truth" by ignoring publicly available information, relying on unreliable sources, or failing to investigate. *See Khalil*, 630 F. Supp. 3d at 585 (actual malice plausibly alleged where "defendants purposefully avoided the truth, given the amount of public information regarding" defamatory statement); *Jones v. Abel*, 2026 WL 835364, at *14 (S.D.N.Y. Mar. 26, 2026) (actual malice can be proved by "reliance on sources known to be unreliable or known to be biased" and the "failure to investigate"); *Goldfarb*, 663 F. Supp. 3d at 312 (denying defendant summary judgment on actual

malice where defendant "fail[ed] to take obvious investigative steps following . . . denials" and "wished to avoid learning" the truth).

Defendants cherry-picked 2023 sources—nearly two years before the Culper Report—while purposefully ignoring or failing to investigate other sources that prove the defamatory statements are false. Compl. ¶¶ 48, 59, 62-63, 73. Some revealed authenticity concerns and factual inaccuracies. *Id.* ¶¶ 35, 37-39, 41, 62. Yet, Defendants omitted information about the dispute over the Fabricated Memos' authenticity and allegations. *Id.* ¶¶ 48, 62, 73. They disregarded nearly two years of fact-checks finding the accusations "unfounded," *id.* ¶¶ 36-41; the Colombian Attorney General's finding of "no evidence of the allegations," *id.* ¶ 43; and sworn reports in Mexican federal court in which Mexican authorities denied "having issued, received, or [having] had any knowledge of" the Fabricated Memos, *id.* ¶¶ 41-42, 62.

Defendants next argue that the Report's inclusion of denials by Banco Serfinanza and Alejandro Char "rebuts an inference of actual malice." Mot. at 18. It reported the denials of two implicated parties, drawn from sources then nearly two years old, Culper Report at 13, Compl. ¶ 62, while omitting the sworn denials of eight Mexican authorities—including the very office to which the Fabricated Memos are attributed—the Colombian Attorney General's archival order, and the independent fact-check. Compl. ¶¶ 39, 41-43, 62. Defendants did not contact Plaintiffs, who would have immediately denied the allegations. *Id.* ¶ 59. And where Defendants wished to flag a denial, they knew how: the Report tells readers to "assume that Vergara has denied and been fully cleared of all allegations." Culper Report at 17 n.18. Instead, the Culper Report announced "new evidence" of cartel ties in Defendants' own voice.

Defendants' argument that the record involved "self-serving" party denials (Mot. at 18-20) conveniently ignores that independent third parties disavowed the Fabricated Memos' authenticity

and the statements therein as early as October 25, 2023—five days after they first circulated. Compl. ¶¶ 39, 41-43. And the Amparo Proceeding denials were sworn reports that Mexican authorities were legally required to file before a Mexican federal court, "under institutional responsibility and within a judicial record." *Id.* ¶¶ 41-42. The court dismissed the proceeding because "there was no evidence rebutting the authorities' sworn denials." *Id.* ¶ 42. To re-characterize those sworn denials before a court as "self-serving" is without merit.

Defendants' reliance (Mot. at 19) on *Harte-Hanks* to suggest that the Supreme Court expressed "skepticism" towards "self-serving" denials is misplaced. There, a judicial candidate and five witnesses denied allegations of bribery during an election. *See Harte-Hanks*, 491 U.S. at 691-92. The Supreme Court held the record ***supported*** an actual malice finding, did not discount the bribery denials, and considered evidence that gave the defendant "obvious reason to doubt" the source. *Id.* at 688, 692 (holding "inaction was a product of a deliberate decision not to acquire knowledge of the facts that might confirm the probable falsity"). Here, Plaintiffs plead facts supporting the same inference: Defendants had access to public records contradicting the Fabricated Memos' authenticity and disputing their allegations. Compl. ¶¶ 32-43, 59, 62-63, 73. Defendants recklessly disregarded those sources and published anyway.

### 3. Defendants Ignored Red Flags And Unreliable Sourcing

Defendants ignored obvious markers that the Fabricated Memos were not authentic, such as why redactions were improperly applied (*compare* Mot. at 22 *with* Compl. ¶ 57) and why an internal intelligence memo "never intended to be released," Mot. at 22, would require redactions at all. Defendants' examples (*see id.*) involve DOJ, not an internal intelligence-agency memo.

Defendants' discussion of hackers and WikiLeaks (Mot. at 22-23) is beside the point. The question is not whether leaking is lawful or authentic leaks exist, but whether Defendants had obvious reasons to doubt this source and ***these*** documents. Compl. ¶ 55; *see Biro*, 963 F. Supp.

2d at 277 (article that is "fabricated or is based wholly on an unverified, anonymous source" is probative of actual malice); *Goldfarb*, 663 F. Supp. 3d at 311-12 (genuine dispute of fact on actual malice where defendant had reasons to doubt informant's credibility). They did: the Fabricated Memos' only source was an anonymous collective, described in the Report's hyperlink as motivated by an activist agenda, and the Fabricated Memos appeared without corroboration in the final days before an election to influence its result.[9] Compl. ¶¶ 35, 38, 55.

### 4. Defendants' Short Position Motivated Them To Injure Plaintiffs

Defendants had a financial incentive to publish the defamatory statements. While profit motive alone does not establish actual malice, courts in this District consider a financial incentive, such as a short position, in assessing whether actual malice is plausibly alleged. *See, e.g.*, *Egiazaryan v. Zalmayev*, 2013 WL 6486258, at *10 (S.D.N.Y. Dec. 11, 2013) ("intent to injure plaintiff" is relevant to actual malice inquiry); *Biro*, 963 F. Supp. 2d at 277 (similar); *Amira Nature Foods*, No. 15 Civ. 9655, ECF No. 66, Hr'g Tr. at 60:21-24 (plaintiff "plausibly allege[d] an intent to injure" where "defendant strategically timed the publication to maximize plaintiff's injury").

Defendants' short position, considered with the totality of the circumstances, suffices to plead actual malice. *See* Compl. ¶ 64; *Goldfarb*, 663 F. Supp. 3d at 311. Plaintiffs plead motive together with an anonymous, uncorroborated source, a contrary public record nearly two years old,

[9] Defendants' rebuttal to "facial abnormalities" (Mot. at 23-24) asks the Court to resolve disputed facts. Defendants say the typefaces and alignment appear consistent "[t]o the extent that these abnormalities even exist (which Culper disputes)," and ask the Court to take judicial notice that the Memo's seal "is a clear match" for a seal on a government website. Mot. at 23. But a defendant's denial of a pleaded fact is no basis for dismissal, and judicial notice permits a court "to determine what statements [the documents] contain," not whether they are what they purport to be or "the truth of the matters asserted" in them. *Biro*, 963 F. Supp. 2d at 265 (quotation omitted); *see also Khalil*, 630 F. Supp. 3d at 578 (courts may not notice articles "for the truth of the matter asserted in the documents themselves"). Whether the seals match and whether the letterhead follows Mexican convention are factual questions for discovery.

selective disclosure, facial anomalies, and a failure to contact Plaintiffs. Compl. ¶¶ 55-64, 73. The short position incentivized Defendants "to publish . . . information that would harm Tecnoglass's share price so that they could profit." *Id.* ¶ 64.

## II. THE COURT SHOULD REJECT DEFENDANTS' REQUEST FOR ATTORNEYS' FEES AND COSTS PURSUANT TO NEW YORK'S ANTI-SLAPP LAW

First, even if Defendants succeed on this Motion (and they should not), several courts in this District have held that attorneys' fees are not available following a successful motion to dismiss. *See Wang v. Sussman*, 2025 WL 2607155, at *4-5 (S.D.N.Y. Sept. 9, 2025) (rejecting argument that 12(b)(6) dismissal "requires fee-shifting"); *Jones*, 2026 WL 835364, at *15 n.4 (collecting cases); *La Liberte v. Reid*, 966 F.3d 79, 88–89 (2d Cir. 2020) (no fee-shifting for dismissal where state law "does not purport to make attorney's fees available to parties who obtain dismissal by . . . Rule 12(b)(6)"); *but see, e.g.*, *Bobulinski v. Tarlov*, 758 F. Supp. 3d 166, 188-89 (S.D.N.Y. 2024). Second, Defendants' showing that the statute is triggered—"the action involving public petition or participation"—is a single conclusory sentence. *See* Mot. at 25. And fees and costs are unwarranted regardless because Plaintiffs have alleged actual malice. *See supra* § I.D; *Novagold*, 2022 WL 900604, at *8 (denying anti-SLAPP claim where plaintiff plausibly alleged actual malice). Lastly, the statute requires that the case "was commenced or continued without a substantial basis in fact and law." N.Y. Civ. Rts. L. § 70-a(1)(a). Neither standard is met because Plaintiffs detail meritorious allegations of false accusations concerning private persons.

## CONCLUSION

The Court should deny Defendants' Motion and request for attorneys' fees and costs. Alternatively, should the Court find any aspect of the Complaint deficient, Plaintiffs request that any dismissal be without prejudice.

Respectfully submitted,

Dated: New York, New York
October 26, 2026

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

By: /s/ Alex Spiro
Alex Spiro
Hope D. Skibitsky
Michael R. Bloom
295 Fifth Avenue
New York, New York 10016
Tel: (212) 849–7000
Email: alexspiro@quinnemanuel.com
hopeskibitsky@quinnemanuel.com
michaelbloom@quinnemanuel.com

*Attorneys for Tecnoglass Holdings Inc., José Daes, and Christian Daes*