**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

TECNOGLASS HOLDINGS INC., JOSÉ DAES, AND CHRISTIAN DAES,

*Plaintiffs*,

v.

CIVIL ACTION NO.: 1:26-CV-06986-PAE

CHRISTIAN LAMARCO and SHADYSIDE PARTNERS, LLC,

*Defendants*.

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' COMPLAINT AND FOR DEFENDANTS' ATTORNEYS' FEES AND COSTS**

## TABLE OF CONTENTS


ARGUMENT ........ 1

I. PLAINTIFFS CANNOT POINT TO ANY FALSE STATEMENTS OF FACT ........ 1

II. PLAINTIFFS' CLAIM FOR DEFAMATION BY IMPLICATION FAILS ........ 5

III. IN THE ALTERNATIVE, CULPER'S STATEMENTS ARE OPINION ........ 6

IV. PLAINTIFFS FAILED TO PLEAD ACTUAL MALICE ........ 7

CONCLUSION ........ 10

CERTIFICATE OF SERVICE ........ 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Biro v. Conde Nast*,
883 F. Supp. 2d 441 (S.D.N.Y. 2012)....6

*Biro v. Conde Nast*,
963 F. Supp. 2d 255 (S.D.N.Y. 2013)....8

*Bobulinski v. Tarlov*,
758 F. Supp. 3d 166 (S.D.N.Y. 2024)....10

*Brian v. Richardson*,
87 N.Y.2d 46 (1995)....7

*Brimelow v. New York Times Co.*,
2021 WL 4901969 (2d Cir. Oct. 21, 2021)....10

*BYD Co. v. VICE Media LLC*,
2022 WL 598973 (2d Cir. Mar. 1, 2022)....8

*BYD Co. v. VICE Media LLC*,
531 F. Supp. 3d 810 (S.D.N.Y. 2021)....8, 10

*Cassava Scis., Inc. v. Bredt*,
2024 WL 1347362 (S.D.N.Y. Mar. 28, 2024)....3

*Condit v. Dunne*,
317 F. Supp. 2d 344 (S.D.N.Y. 2004)....3

*Cortes v. Twenty-First Century Fox Am., Inc.*,
285 F. Supp. 3d 629 (S.D.N.Y. 2018)....4

*Deluliis v. Engel*,
2021 WL 4443145 (S.D.N.Y. Sept. 27, 2021)....6

*Dfinity Found. v. New York Times Co.*,
702 F. Supp. 3d 167 (S.D.N.Y. 2023)....3

*Enigma Software Grp. USA, LLC v. Bleeping Comput. LLC*,
194 F. Supp. 3d 263 (S.D.N.Y. 2016)....4

*Flamm v. Am. Ass'n of Univ. Women*,
201 F.3d 144 (2d Cir. 2000)....3

*Grifols, S.A. v. Yu*,
2025 WL 1826611 (S.D.N.Y. July 2, 2025) ....................5

*Henry v. Fox News Network LLC*,
629 F. Supp. 3d 136 (S.D.N.Y. 2022)....................4

*Kesner v. Dow Jones & Co., Inc.*,
515 F. Supp. 3d 149 (S.D.N.Y. 2021)....................3

*Loeb v. News Times Commc'ns Corp.*,
497 F. Supp. 85 (S.D.N.Y. 1980) ....................10

*Louisiana Health Service & Indemnity Company v. Celgene Corporation*,
2026 WL 891259 (S.D.N.Y. 2026)....................5

*Prince v. Intercept*,
2023 WL 4492413 (S.D.N.Y. July 12, 2023) ....................10

*Stepanov v. Dow Jones & Co.*,
120 A.D.3d 28 (1st Dep't 2014) ....................5

*Valley Elecs. AG v. Polis*,
2021 WL 3919244 (E.D.N.Y. Aug. 6, 2021), *aff'd*, 2022 WL 893674 (2d Cir. Mar. 28, 2022)....................3

*Valley Elecs. AG v. Polis*,
2022 WL 893674 (2d Cir. Mar. 28, 2022)....................7

*Wright v. Ernst & Young LLP*,
152 F.3d 169 (2d Cir. 1998)....................2

Plaintiffs' Opposition confirms the futility of their defamation claim. The Report that Plaintiffs allege is defamatory is a 35-page, single-spaced article detailing the reasons that Culper took a short position in Tecnoglass. It set forth extensive sources that connected Plaintiffs to individuals and institutions alleged as cartel-related. Rep. 2–6, 10–24, as described in Br. 4–7. *Plaintiffs do not challenge any of these portions of the Report or argue that any of the facts describing these connections are false.* The Report also explains Culper's discovery that a Mexican "intelligence document" describing a particular Sinaloa cartel scheme—a document that had been circulating in the general public for years and prompted press reports and a government investigation—listed the Daes brothers "as businessmen involved in the scheme." *Plaintiffs do not dispute that they were named in this Hacked Memo.* The Report also describes how the Hacked Memo set forth the role of Banco Serfinanza in the purported scheme and lays out the many connections between the bank and Plaintiffs. *Plaintiffs do not dispute any of these facts either.*

Against this backdrop, Plaintiffs' claim is narrow: they claim that the Report falsely stated that the Hacked Memo was "government-confirmed," that it was "part of the Guacamaya leaks," and that it linked the Daes brothers to the Sinaloa cartel. Opp. 2, 9. As set forth in Defendants' Opening Brief, and in light of Plaintiffs' concessions, their defamation claim must be dismissed.

## ARGUMENT

### I. PLAINTIFFS CANNOT POINT TO ANY FALSE STATEMENTS OF FACT

Plaintiffs argue that Defendants "falsely stated that the [Hacked Memo] was part of the Guacamaya Leaks." Opp. 9. Setting aside that the Report does not definitively say this, Plaintiffs do not plead that this is false. To the contrary, Plaintiffs concede that both Mexican and Colombian media reported that the Hacked Memo was, in fact, part of the Guacamaya Leaks. Compl. ¶ 35. One of those outlets, W Radio, broke the story of the Guacamaya Leaks by publishing the leaked data, including the Hacked Memo. Rep. 12; Compl. ¶ 35.

Moreover, the Report never says the Hacked Memo was "government confirmed," *i.e.*, that any government body verified its claims or otherwise held it out as authentic. Rather, the Report properly disclosed that the Mexican government "confirmed" the *general occurrence* of the Guacamaya Leaks. Rep. 12 ("the Mexican government confirmed ***the leaks***"). Plaintiffs' insistence that the Report meant something else is a contrived reading of the Report's plain text. Similarly, contrary to Plaintiffs' distortions, the Report nowhere states that the Hacked Memo was a "genuine product of Mexican intelligence." Opp. 12. The Report took no position on the Hacked Memo's authenticity but instead presented numerous facts allowing readers to form their own conclusions, *e.g.*, disclosing that the document was part of a hacking and that accusations in it were denied by some. Rep. 12–13.[1] Even so, it is the very fact that the Daes brothers *are named* in the Hacked Memo (authentic or not) that gave rise to Culper's concern (plus the other undisputed facts in the Report).[2]

Plaintiffs also now suggest for the first time that Defendants should be liable for "repeating the [Hacked Memo's] false and defamatory statements" (Opp. 8), "[e]ven if [they] accurately reported the [Hacked Memo's] contents." *Id*. 11. But Plaintiffs *never pled* that the specific statements in the Hacked Memo that are cited in the Report are defamatory. Plaintiffs cannot amend their complaint via an opposition brief, particularly where they declined the Court's invitation to amend. *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (denying attempt to amend complaint by raising new theory in opposition to a motion to dismiss, finding

[1] Nor does the Report's disclaimer implicitly represent the Memo to be authentic. Opp. 12–13. It expressly states it was making "no representation" regarding the "accuracy" of its sources, including the Hacked Memo. Rep. 1.

[2] Plaintiffs' suggestion that this is a "litigation-driven retelling" resting on a "single line buried" in the Report (Opp. 10, n.4) is absurd. The Report made clear *in its first sentence* it was commenting on the Hacked Memo's impact on Tecnoglass stock, and the entire Report's content supports the short position disclosed in that first sentence. Rep. 2.

plaintiff "waived" the right to amend when she "elected to stand on the [] complaint rather than replead" by court invitation); ECF 20.

More fundamentally, the Report chronicled *what the Hacked Memo* said about Plaintiffs—it did not endorse the truth of those allegations. This is not defamation. *Dfinity Found. v. New York Times Co.,* 702 F. Supp. 3d 167, 175 (S.D.N.Y. 2023) (statements "simply report[ing] the alleged findings contained in a [third-party] Report" not actionable)[3]; *Valley Elecs. AG v. Polis*, 2021 WL 3919244, at *8 (E.D.N.Y. Aug. 6, 2021) (where article stated that, "[f]or Polis and other critics, Daysy is just one of the many fertility products now flooding the market without solid evidence to stand on," "inclusion of the phrase '[f]or Polis and other critics' also makes clear to the reader that the statement merely reflects the opinion of the individuals interviewed"), *aff'd*, 2022 WL 893674 (2d Cir. Mar. 28, 2022); *Kesner v. Dow Jones & Co., Inc.,* 515 F. Supp. 3d 149, 173 (S.D.N.Y. 2021) (no defamation where defendant "did not adopt [third-party's] accusations as its own. It merely chronicled them.").[4]

Plaintiffs try to rebut this principle with inapt case law. *Flamm v. Am. Ass'n of Univ. Women*, 201 F.3d 144 (2d Cir. 2000), concerned whether a directory of lawyers that included a disparaging description of the plaintiff, which was held out as a true statement of fact, implied defamatory, undisclosed underlying facts. And in *Condit v. Dunne*, 317 F. Supp. 2d 344, 371 (S.D.N.Y. 2004), which applies California defamation law, there was no dispute that the facts being retold—accusations of criminality by a "horse whisperer"—were demonstrably false and

[3] Plaintiffs try to distinguish *Dfinity*, suggesting the Court ruled not due to a failure to plead falsity, but because the statement was opinion. In fact, the Court ruled on both grounds, noting plaintiffs' failure to "establish [] falsity." *Id.*

[4] The Report repeatedly reminded the reader that it was only recounting what the Hacked Memo described, for example, making clear in its very first two headings, in **bold**, that it was only recounting what was "**Alleged**" "**According to**" the "**Memos**" and what the "**Memos Allege**." Even where the Report did not use the word "allege" in connection with the Hacked Memo, the context of the entire article—starting with the overarching headline—clarifies that the statements from the Hacked Memo are recounted allegations. *Cassava Scis., Inc. v. Bredt*, 2024 WL 1347362, at *7 (S.D.N.Y. Mar. 28, 2024) ("Allegedly defamatory statements must not 'be read in isolation, but must be perused as the average reader would against the 'whole apparent scope and intent' of the writing.'").

defendant "concurred in the allegations he reported, making clear in each publication that he believed" them. Nor is *Enigma Software Grp. USA, LLC v. Bleeping Comput. LLC*, 194 F. Supp. 3d 263, 284–87 (S.D.N.Y. 2016), helpful. In *Enigma*, the challenged statements were made by defendant's "expert staff members" who would provide "correct and understandable answers" on a software forum and, to the extent the experts' "answers" included customer complaints, those complaints (not otherwise corroborated by disclosed facts) were incorporated as fact into the "expert" answers maligning the plaintiff's product. Plaintiffs attempt to distinguish *Henry v. Fox News Network LLC,* 629 F. Supp. 3d 136 (S.D.N.Y. 2022) and *Cortes v. Twenty-First Century Fox Am., Inc.,* 285 F. Supp. 3d 629 (S.D.N.Y. 2018), cases applying New York defamation law, on the grounds that the "Complaint pleads facts … showing that the 'steps' the Culper Report describes … never occurred" (Opp. 12), but do not cite any purportedly false "steps" described in the Report.

Plaintiffs also argue that "Defendants did not merely report the Fabricated Memos;[5] they altered them to meet Defendants' desired narrative." Opp. 11. But Plaintiffs identify no "altered" statement from the Hacked Memo. Plaintiffs instead make vague, sweeping statements—for example, that the Report "manufacture[s] a connection … between Plaintiffs and illicit cartel activity." *Id.* But any such connection is borne out in the text of the Hacked Memo, which is hyperlinked and embedded in the Report. Indeed, Plaintiffs pled that "Plaintiffs are referenced in a list of 'businessmen' whom the documents describe as being responsible for repaying a loan through government contract proceeds." Compl. ¶ 60. The heading of that very section of the Hacked Memo (shown in the Report) describes "the possible participation of the Sinaloa Cartel faction in the illicit financing of the presidential campaign of the Republic of Colombia"—and *then* lists the "businessmen who are a part of this scheme," including Plaintiffs. Rep. 12–13

[5] Plaintiffs' use of their defined term "Fabricated Memos" is, of course, their choice, but they have not demonstrated that the memos were actually "fabricated," nor do they allege that Defendants were responsible for any "fabrication."

(translating embedded text of the memo). Plaintiffs do not plead that this statement from the Hacked Memo is false; the Report's retelling of it cannot therefore be defamatory. And the Report's various characterizations of this theme, *i.e.*, that Plaintiffs were "alleged to aid" the cartel's "illicit financing schemes" and that the Hacked Memo "link[ed]" them to "Sinaloa cartel operations" (Rep. 2), are undisputedly accurate descriptions of the Hacked Memo.[6]

Unable to point to any false statements of fact, Plaintiffs instead argue that the Report makes "statements about plaintiffs that appear nowhere in the [Hacked Memo]" and that the Report "altered" that memo's statements. Opp. 8, 11. They repeatedly insist that the Hacked Memo "never say[s] that Plaintiffs had any contact with or role in the cartel or any knowledge" that the money came from the cartel. Opp. 2. But the Report never states otherwise. Plaintiffs also argue the Report improperly concludes that Plaintiffs are part of a drug cartel, "were Cartel Members"—or worse, that Culper's X posts claim that "'officials allege' Plaintiffs were cartel 'participants.'" Opp. 8–10. But, again, none of these statements appear anywhere in the Report.[7]

## II. PLAINTIFFS' CLAIM FOR DEFAMATION BY IMPLICATION FAILS

Plaintiffs argue that the Report includes the defamatory *implication* that "Plaintiffs were illegally associating with the cartel" (Opp. 14)—despite not pleading a count for defamation by implication. Indeed, the Complaint nowhere includes the word "imply" or any form of it. In any event, Plaintiffs cannot make the "rigorous showing" for such a claim. *Stepanov v. Dow Jones & Co.,* 120 A.D.3d 28, 37 (1st Dep't 2014). The Report embeds the text of the Hacked Memo and includes additional independent facts connecting Plaintiffs to other cartel-related activity (Rep. 2–

[6] Plaintiffs attempt to supplement their falsity argument by attaching an attorney-created chart including analysis and argument as Exhibit A. ECF 25-1. This is a clear attempt to evade this Court's strict 25-page limit; the chart should be stricken or disregarded. *Louisiana Health Service & Indemnity Company v. Celgene Corporation*, 2026 WL 891259, *10–11 (S.D.N.Y. 2026) (striking chart with attorney argument that exceeded the court's page limit).

[7] Plaintiffs' reliance on *Grifols, S.A. v. Yu*, 2025 WL 1826611, at *20 (S.D.N.Y. July 2, 2025), is unavailing. In that case, the court found falsity adequately pled as to one statement where defendant falsely asserted that a company had an undisclosed loan, which was demonstrably disclosed in financial documents cited by defendants.

6, 10–24)—none of which Plaintiffs contest. Opp. 18. If, on the basis of these undisputed facts, a reader were to infer that "Plaintiffs were illegally associating with the cartel," then "that defamatory implication arises only because of the facts set forth in the article *that he does not allege to be false.*" *Biro v. Conde Nast*, 883 F. Supp. 2d 441, 469 (S.D.N.Y. 2012).

## III. IN THE ALTERNATIVE, CULPER'S STATEMENTS ARE OPINION

To the extent that Plaintiffs argue that the Report somehow claims that the Hacked Memo is authentic (it does not), that conclusion would be protected opinion.[8] Indeed, Plaintiffs cannot avoid the fact that the Report includes *undisputed* facts that are consistent with the Daes brothers being named in the Hacked Memo. Plaintiffs detail these facts in their Opposition: "the Char and Daes' families' ties to Banco Serfinanza, the Gerlein and Amaris connections, and the Hindenburg Report." Opp. 18. And Plaintiffs concede that they do not challenge these underlying facts. *Id.* While Plaintiffs argue that "none of those facts bears on whether the [Hacked] Memo is authentic" (*id.*), as explained in the Opening Brief, these disclosed facts linked Plaintiffs to parties connected to cartel activities (among other things), and they corroborate the allegations in the Hacked Memo. Br. 15. Given these disclosed facts, Culper was fully entitled to draw conclusions about the Hacked Memo's authenticity. *Deluliis v. Engel*, 2021 WL 4443145, at *5 (S.D.N.Y. Sept. 27, 2021) ("[A]s the Engel Article cites to the Report as the basis for its conclusions (and the derivative Shvedsky Article does the same by linking to the Engel Article), the authors lay out the basis for their conclusions and thus these expressions of opinion are not actionable under New York law.").

For this reason, Plaintiffs' case law, where other plaintiffs specifically pled *false* facts, is unavailing. *Cf.* Opp. 14–21 (citing cases). And given the extensively hyperlinked and embedded support for Culper's inferences, Plaintiffs' argument that the Report implied false, *undisclosed*

[8] Plaintiffs misunderstand Defendants' opinion argument. The challenged statements are not false. If Plaintiffs suggest that the Report endorsed a conclusion the Hacked Memo was authentic, that conclusion is protected opinion.

facts "regarding the Fabricated Memos' authenticity" fails. *Valley Elecs. AG v. Polis*, 2022 WL 893674, *2 n.3 (2d Cir. Mar. 28, 2022) (defendant's "disclosure and the inclusion of hyperlinks to other sources also provide 'the basis for [defendant's] personal opinion, leaving it to the readers to evaluate [her claims] for themselves.' We thus identify no factual allegations admitting a plausible inference that [defendant's] opinions implied knowledge of undisclosed facts").

Finally, Plaintiffs point to Culper's characterization of its research as having "uncovered new evidence," suggesting such language signaled the Hacked Memo's contents were fact-based. Opp. 15, 17. Plaintiffs once again rely on a contrived read of the Report. The Report accurately stated that Culper "uncovered new evidence" because (1) Culper found Plaintiffs—who had *already* been accused of cartel ties (Rep. 5–7), which they do not dispute—had *also* been named in the Hacked Memo, and (2) Plaintiffs' appearance in the Hacked Memo (an undisputed fact) had not been previously reported because of redactions, in contrast to other individuals and institutions named. This unredacted "new evidence" supported Culper's "overarching opinion" about Tecnoglass stock. *See Brian v. Richardson*, 87 N.Y.2d 46, 53–54 (1995) (statements recounting third-party allegations were opinion where offered not as "demonstrable fact" or "to convince the reader" of their truth, but to opine based on the fact they were made).

## IV. PLAINTIFFS FAILED TO PLEAD ACTUAL MALICE

Plaintiffs argue that Defendants published false statements "with a purposeful avoidance of the truth" and cite cases where the pleadings revealed that the author was *in possession of* facts that contradicted the defamatory false statements (Opp. 20–21), but their Complaint in no way supports this argument. Other than the vague and general statement that "[t]he link Defendants drew between Plaintiffs and the Sinaloa cartel is one that the [Hacked Memo] do[es] not make" (*id.*), Plaintiffs do not identify a single false statement in the Report that is contradicted by

information in Culper's possession at the time the statements were made. The Report fairly characterizes the statements in the Hacked Memo, and even if Plaintiffs could point to minor inaccuracies, that is not sufficient to demonstrate actual malice. *BYD Co. v. VICE Media LLC*, 2022 WL 598973, at *3 (2d Cir. Mar. 1, 2022) ("To the extent that there is an appreciable difference in meaning between the statement that BYD used forced Uyghur labor 'in its supply chain,' and the statement that BYD 'directly or indirectly benefit[ed]' from such labor, standing alone, it is far too insignificant to support a claim of actual malice.").

To the extent Plaintiffs argue that there were "specific and concrete reasons to doubt the authenticity of" the Hacked Memo (Opp. 21), we note that the Report actually disclosed the potential problems with the memo—thus foreclosing an argument of actual malice. *Biro v. Conde Nast*, 963 F. Supp. 2d 255, 287–88 (S.D.N.Y. 2013) (providing alternate views undermines suggestion of actual malice). Nor does the Report state that the specific allegations in the Hacked Memo about the Plaintiffs are true. Rather, the Report repeatedly refers to Plaintiffs' inclusion in the Hacked Memo with the qualifier "alleged," and it is clear from the Report's thesis that Plaintiffs' identification in the Hacked Memo demonstrates it could impact Tecnoglass stock. *BYD Co. v. VICE Media LLC*, 531 F. Supp. 3d 810, 823–24 (S.D.N.Y. 2021) (no actual malice where allegations in third-party report were not asserted for their "truth" but rather merely to note that plaintiff was "identified in [a] report" listing companies associated with using forced labor).

Plaintiffs next accuse Defendants of "purposefully ignoring or failing to investigate other sources that prove the defamatory statements are false." Opp. 22. But, as described in the Opening Brief, Plaintiffs pled no "source[] that prove[s] the defamatory statements are false." Opp. 22. Plaintiffs mischaracterize and selectively quote Mexican government statements, which (by Plaintiffs' own account) stated only that "certain documents" arising from the leaks "are not

considered *official*"—but nothing specifically about Plaintiffs' inclusion in the Hacked Memo, and certainly nothing about it being *fabricated*. Compl. ¶ 34. Plaintiffs refer to "two years of fact-checks" by the Colombian outlet *El Expediente*, which purportedly found non-specific "accusations" to be "unfounded"—but not only did Plaintiffs fail to plead *which* accusations, or why this outlet's determination carries any weight, Plaintiffs' own allegations demonstrate that this determination was based on media outlets failing to present *affirmative evidence* in support of the Hacked Memo, not any facts that prove falsity. Opp. 22. Plaintiffs say the Colombian Attorney General found "no evidence of the allegations" (*id.*) (again, failing to specify *which* allegations), but they fail to address Defendants' argument that the Attorney General never concluded the Hacked Memo was inauthentic, only that they could not locate extrinsic evidence of it. Tellingly, despite Defendants' invitation, Plaintiffs do not identify or link to any public source for the investigation's results nor identify how Culper could have known about them (let alone did know).

And, finally, Plaintiffs' continued insistence that the Amparo Proceedings found the Hacked Memo "fabricated" is grasping at straws. Plaintiffs do not dispute Defendants' characterization of that proceeding (a constitutional proceeding that *was not* intended to determine the authenticity of the Hacked Memo but rather whether Banco Serfinanza put forth evidence showing violation of rights) or Defendants' position that the Amparo Proceedings did not result in any judicial finding about the authenticity of the Hacked Memo. Br. 19–20. That Mexican government officials denied the Hacked Memo in a proceeding implicating those officials is hardly surprising. Br. 19.[9] Ultimately, these "public records" fall far short of Plaintiffs' characterization that they "contradict[] the [Hacked] Memos' authenticity and disput[e] their allegations." Opp. 23.

[9] Plaintiffs complain that Culper did not contact them for comment. But a defendant's "'failure to verify statements with the plaintiff ... do[es] not amount to reckless disregard of the truth.'" *Prince v. Intercept*, 2023 WL 4492413, at *10 (S.D.N.Y. July 12, 2023) (quoting *Loeb v. News Times Commc'ns Corp.*, 497 F. Supp. 85, 93 (S.D.N.Y. 1980)).

Moreover, because actual malice is a "subjective inquiry," the general existence of supposedly "contrary information" cannot establish actual malice without a showing that Culper was *actually* aware of such information. *BYD,* 531 F. Supp. 3d at 826 ("[f]or purposes of actual malice, recklessness is measured not by whether a reasonably prudent man would have published, or would have investigated before publishing, but instead whether there is sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication" (internal citation omitted)); *Bobulinski v. Tarlov*, 758 F. Supp. 3d 166, 179–80 (S.D.N.Y. 2024) (no actual malice; "[j]ust because such [contrary] information is publicly available does not mean that [defendant] was under an affirmative duty to seek it out before she spoke on air"); *Brimelow v. New York Times Co*., 2021 WL 4901969, at *2 (2d Cir. Oct. 21, 2021) (no actual malice where "[plaintiff] does not show that the Times was or should have been aware of that [contrary information] and purposefully avoided it"). In Plaintiffs' cases, defendants reviewed or cited to the supposedly contradictory information. Opp. 21–22.

Finally, any suggestion that the account in the Report was "inherently improbable" (*id.*) ignores that Plaintiffs do not dispute the Report's extensive facts connecting Plaintiffs to cartel-related banks and individuals. *Id.* at 18; Br. at 21.[10]

## CONCLUSION

For the foregoing reasons, this Court should grant the Motion.

[10] Plaintiffs' remaining arguments for actual malice fail. Plaintiffs' continued reliance on purported "red flags" about the Hacked Memo's authenticity does not demonstrate that Culper had *subjective* doubts about the truth of the statements. And Plaintiffs admit that a financial incentive alone "does not establish actual malice." Opp. 24. The cases dismissing defamation claims against short-sellers on actual malice grounds underscore this point. Br. 13–14.

Dated: New York, New York
November 9, 2026

Respectfully submitted,

**COZEN O'CONNOR**

By: _/s/ Michael B. de Leeuw_
Michael B. de Leeuw
Tamar S. Wise
mdeleeuw@cozen.com
twise@cozen.com
3 WTC, 175 Greenwich Street, 55th Floor
New York, New York 10007
Telephone: (212) 908-1331
Fax: (646) 461-2090

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on November 9, 2026, I caused the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the attorneys of record for all parties, including, but not limited to:

Alex Spiro
Quinn Emanuel Urquhart & Sullivan, LLP
295 5th Avenue
New York, NY 10016
212-849-7000
alexspiro@quinnemanuel.com

Danielle Zoellner
Quinn Emanuel Urquhart & Sullivan
295 Fifth Avenue
New York, NY 10016
212-849-7631
daniellezoellner@quinnemanuel.com

Hope Delaney Skibitsky
Quinn Emanuel Urquhart & Sullivan, LLP
295 Fifth Avenue
New York, NY 10016
212-849-7535
hopeskibitsky@quinnemanuel.com

Michael Ryan Bloom
Quinn Emanuel Urquhart & Sullivan, LLP
295 Fifth Ave.
9th Floor
New York, NY 10016
212-849-7000
michaelbloom@quinnemanuel.com

Dated: November 9, 2026

*/s/ Michael B. de Leeuw*
Michael B. de Leeuw